**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES R. CRUZ, | : | Civil No. 3:23-cv-1387 |
| Petitioner | : | (Judge Mariani) |
| v. | : | |
| SUPERINTENDENT WALKER, *et al.*, | : | |
| Respondents | : | |

# MEMORANDUM

Petitioner James Cruz ("Cruz") filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging a judgment and conviction imposed in the Court of Common Pleas of Centre County, Pennsylvania. (Doc. 1). For the reasons set forth below, the Court will deny the habeas petition and a certificate of appealability will not issue.

## I. Background[1]

The state court summarized the factual back of this matter as follows:

> On March 23, 1993, the body of a young deceased female was found at 6:20 in the morning by a passing motorist. The female was partially undressed and her body was on top of snow, near an on ramp for Pennsylvania State Route 26, about one and one-half miles south of the Interstate Route 80 in Centre County, Pennsylvania. Tire tracks were noticed at the berm near the body which appeared to be fresh tracks from a large vehicle. Investigating officers made castings of those tracks.
>
> The deceased female was identified as seventeen-year old Dawn Birnbaum who had run away from the Elan School in Poland Spring, Maine. Ms.

[1] The Court derived all pertinent facts and procedural history from the habeas petition itself and Respondents' exhibits. (Doc. 1; Docs. 24-1 through 24-45).

Birnbaum was last seen at a truck stop in Maine where she had been making calls on a pay phone and then was observed running toward the trucks.

Subsequent autopsy and lab testing of Ms. Birnbaum revealed her cause of death was homicide by ligature strangulation. Spermatozoa and seminal fluid were found in her vagina, anus, and on her underwear. Lab testing revealed the male who was the source of the bodily fluids was a Type A secretor meaning the individual secretes his blood type antigens into his bodily fluids. Not all individuals secrete their blood type antigens into their bodily fluids; it is a genetic trait. Additionally, during examination of the body, a hair was found under the rope that was wrapped around Ms. Birnbaum's neck and hairs were found on the clothing and body.

Based on the last known whereabouts of the victim, the location of the deceased body being near a major interstate, and the large tire tracks found near the body, the investigators looked into what trucks were present at the truck stop in Maine where Ms. Birnbaum was last seen alive making telephone calls and collected fuel receipts from there and truck stops near where the body was found in Pennsylvania. (Tr. Randy Cohick 6/8/1994 at 98-100). Investigators were able to confirm that Ms. Birnbaum was at the Dysart truck stop in Maine through telephone records as she phoned her counselor at the Elan School to check in. (Tr. William Madden 6/8/1994 at 228; Mark Rosenburg 6/6/1994 at 154-155). After comparing the receipts, the investigators were able to determine that Petitioner, James Cruz with Century trucking had purchased fuel in both locations. (Tr. 6/8/1994 Cohick at 100). The tires on the tractor trailer operated by Mr. Cruz were consistent in pattern with the tire casts collected from the berm where Ms. Birnbaum's body was found. (Tr. 6/8/1994 Cohick at 100-101; Mark Brothers 6/6/1994 at 94-97). Evidence further reflected the Petitioner falsified his travel logs to reflect that he was in Altoona, Pennsylvania on the evening of March 23 and off duty from 6:30 p.m. until 11:00 a.m. the following day. (Tr. 6/8/1994 Madden at 239-239). When Petitioner was shown a photo of Ms. Birnbaum he denied having ever met her although the DNA evidence demonstrated that his DNA was collected from her vagina, anus, and underwear. (Tr. Cohick 6/8/1994 at 117). Evidence was collected from the truck including hairs, fibers, and debris. The evidence collected from the truck and the hairs found on Ms. Birnbaum's body were sent to the FBI for analysis along with sample hairs from Ms. Birnbaum and Petitioner.

(Doc. 24-28, at 3-5, PCRA Court Notice of Intent to Dismiss Pursuant to Pa. R. Crim. P. 907).

On September 8, 1993, Cruz was charged with the kidnapping, rape, and murder of Ms. Birnbaum. (Doc. 24-2, Criminal Complaint).

On November 1, 1993, defense counsel filed a request for a bill of particulars and an omnibus pretrial motion raising the following claims for relief: (i) that the trial court should permit individual voir dire of prospective jurors and sequester all trial jurors; (ii) that venue should be changed or, alternatively, the venire should be changed; (iii) that trial should be postponed; (iv) that the Commonwealth's notice of aggravating circumstances and intention to seek the death penalty should be dismissed or quashed; (v) that the criminal action should be dismissed or quashed on grounds of lack of jurisdiction; (vi) that statements made by Cruz to the police should be suppressed; and (vii) that the results of blood, hair, and DNA analyses should be suppressed. (Doc. 24-4). On February 11, 1994, the trial court granted the first claim but denied all other claims. (*Id.*).

A jury trial commenced on June 6, 2014. (Docs. 42-36 through 24-42, Trial Transcript). On June 14, 1994, a jury convicted Cruz of first-degree murder and theft. (Doc. 24-5, Verdict Slip; Docs. 42-36 through 24-42, Trial Transcript; *Commonwealth v. Cruz*, Criminal Action No. 1993-1246 (Pa. Ct. Comm. Pl. Centre Cnty.)). As the Pennsylvania Superior Court aptly summarized:

> At trial, the Commonwealth entered evidence relating to a number of hairs, recovered during the underlying criminal investigation, which implicated Cruz

> in the murder. Specifically, hair identified as belonging to the victim was found in the cab of Cruz's truck, and hair identified as belonging to Cruz was found on the ropes that had been used to bind and fatally strangle the victim.
>
> To establish that the recovered hairs belonged to Cruz and to the victim, the Commonwealth relied, in part, on microscopic hair analysis. FBI Agent Chester Blythe testified at trial regarding the use of microscopic hair analysis as a forensic method. In this testimony, Agent Blythe drew scientific conclusions that implicated Cruz in the murder of the victim...

*Commonwealth v. Cruz,* 2017 WL 4334199, at *1 (Pa. Super. 2017).

Immediately following the verdict, the trial court sentenced Cruz to life imprisonment. (Doc. 24-42).

Cruz filed a timely direct appeal and raised the following issues:

> I. Did the trial court abuse its discretion in denying Mr. Cruz's motion for change of venue, or in the alternative, a change of venire, when the pervasive pre-trial publicity referred to Mr. Cruz as a suspected serial-killer and his prior conviction for attempted murder?
>
> II. Did the trial court err in denying Mr. Cruz's motion to suppress (blood, hair, and "DNA" analysis) because the affidavit to support issuance of the day-time search warrant did not contain sufficient probable cause, and Mr. Cruz's blood and hair were not seized until after 10:00 p.m.?
>
> III. Did the trial court give erroneous and confusing jury instructions, such that a mistrial should have been declared?

(Doc. 24-6, Appeal Brief at 14). On direct appeal, the Pennsylvania Superior Court affirmed the judgment of sentence. (Doc. 24-7, *Commonwealth v. Cruz*, No. 00423 Harrisburg 1994 (Pa. Super. 1994)). Cruz filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied. (Doc. 24-9, *Commonwealth v. Cruz*, 45 M.D. Alloc. Dkt. 1996 (Pa. 1996)).

On March 18, 1997, Cruz filed his first *pro se* petition for post-conviction collateral relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 PA. CONS. STAT. §§ 9541-46. (Doc. 24-10, PCRA Petition). Counsel was appointed to represent Cruz, and counsel filed an amended PCRA petition. (Doc. 24-11, Amended PCRA Petition). Counsel sought relief on the following grounds:

> I. Trial Counsel was ineffective in failing "to secure an independent expert to review and analyze the laboratory/DNA testing provided by the Commonwealth"
>
> II. Trial Counsel was ineffective "in their strategy in failing to secure an independent witness to examine the DNA, in conjunction with their decision to attempt to convince [Cruz] that he should not take the stand"
>
> III. Trial Counsel was ineffective in either failing to object to or raise the issue on direct appeal where objections may have been lodged as it relates to comments made by the District Attorney in closing and otherwise as it related to the demeanor of Defendant when confronted with the death of Dawn Birnbaum, as well as other statements in closing..."
>
> IV. Cruz was "denied meaningful due process" due to the 15-year delay in considering his PCRA claims

(Doc. 24-11, at 5-7). Following a hearing, the PCRA court denied the petition. (Doc. 24-13, PCRA Court Opinion, *Commonwealth v. Cruz*, 2014 WL 8107150 (Pa. Super.)). Cruz filed a timely notice of appeal and raised the following issues:

> I. Did the PCRA Court commit legal error in dismissing Defendant's post-conviction collateral relief petition and amended post-conviction collateral relief petition?
>
> A. Did the PCRA Court err in finding that Defendant abandoned his post-conviction collateral relief petition?

B. Did the PCRA Court err in finding that the Commonwealth was prejudiced as a result of the delay from the time of the filing of the petition to the date of the hearing on the Commonwealth's motion to dismiss?

II. Did the PCRA Court err in dismissing Defendant's petition to supplement the record?

(Doc. 24-14, at 8). On March 5, 2015, the Pennsylvania Superior Court affirmed the PCRA court's order denying the PCRA petition.[2] (Doc. 24-15, *Commonwealth v. Cruz*, No. 384 MDA 2014 (Pa. Super.)). Cruz filed a petition for allowance of appeal with the Pennsylvania Supreme Court. (Doc. 24-16). On August 26, 2015, the Pennsylvania Supreme Court denied Cruz's petition for allowance of appeal. (Doc. 24-17, *Commonwealth v. Cruz*, No. 249 MAL 2015 (Pa.)).

On or about September 2, 2015, Cruz filed his second *pro se* PCRA petition. (Doc. 24-18, Second PCRA Petition, dated September 2, 2015). Counsel subsequently filed an amended second PCRA petition. (Doc. 24-19, Amended Second PCRA Petition). On August 5, 2016, the PCRA court dismissed the amended second PCRA petition as untimely. (Doc. 24-20). Cruz filed a notice of appeal. (*See* Doc. 24-21). On September 29, 2017, the Pennsylvania Superior Court affirmed the PCRA court's order, and found "no error in the PCRA court's dismissal of Cruz's second, untimely PCRA petition." (Doc. 24-21, *Commonwealth v. Cruz*, No. 1728 MDA 2016, 2017 WL 4334199 (Pa. Super. 2017)). In an

---

[2] As the Pennsylvania Superior Court noted, "[t]he record does not explain the delay between the 1997 filing and the 2015 disposition of the first PCRA appeal." *Commonwealth v. Cruz*, 2017 WL 4334199, at *1 n.2 (Pa. Super. 2017).

attempt to overcome the jurisdiction time bar, Cruz argued that a letter from the Department of Justice constituted a "newly-discovered fact." *Commonwealth v. Cruz*, 2017 WL 4334199, at *2. The Superior Court noted that:

> Per an agreement with the Innocence Project, the Department of Justice ("DOJ") ordered the FBI to undertake a review of cases that involved microscopic hair analysis, including Cruz's conviction. As a result of that review, the DOJ issued a letter on June 8, 2015 that identified several areas in which Agent Blythe's testimony exceeded the scientific limitations of microscopic hair analysis. A copy of the DOJ letter was subsequently provided to Cruz, which prompted the current PCRA petition.

*Id.* at *1. The Pennsylvania Superior Court held that "the DOJ letter does not contain 'newly-discovered facts' to support a timeliness exception under section 9545(b)(1)(ii)." *Id.* at *3 (footnote omitted).

Cruz filed a petition for allowance of appeal with the Pennsylvania Supreme Court. (Doc. 24-22). While his petition for allowance of appeal was pending, the Supreme Court decided *Commonwealth v. Chmiel*, 173 A.3d 617 (Pa. 2017), holding that a public admission by the FBI of "widespread, systematic error" in its microscopic hair comparison analysis ("MHCA") was a newly discovered fact sufficient to invoke the timeliness exception defined by 42 Pa.C.S. § 9545(b)(1)(ii). In light of the *Chmiel* decision, the Pennsylvania Supreme Court vacated the judgment of the Superior Court dismissing the amended second PCRA petition as untimely and remanded to the PCRA court for reconsideration. (Doc. 24-23, *Commonwealth v. Cruz*, No. 734 MAL 2017, 646 Pa. 19, 183 A.3d 348 (Table) (Pa.)).

On remand, the PCRA court dismissed the petition and found that, even in light of the Pennsylvania Supreme Court's holding in *Chmiel*, Cruz's petition was untimely. (Doc. 24-24). Cruz filed a timely notice of appeal in the Pennsylvania Superior Court. (Doc. 24-25). On November 15, 2019, the Pennsylvania Superior Court reversed the PCRA court order dismissing Cruz's petition as untimely and remanded the matter for further proceedings. (Doc. 24-26, *Commonwealth v. Cruz*, No. 110 MDA 2019, 223 A.3d 274, 2019 Pa. Super 342 (Pa.)).

On April 19, 2021, the PCRA court dismissed the petition. (Doc. 24-30). Cruz filed a timely appeal in the Pennsylvania Superior Court and raised the following issues on appeal:

> I. Did the PCRA Court for the third time, dismiss the PCRA Petition without a merits review hearing where Petitioner was otherwise entitled to the same, in violation of *Commonwealth v. Chmiel* or other controlling case law?
>
> II. Did the PCRA Court for the third time, dismiss the PCRA Petition on the basis of insufficient after-discovered evidence which should have been addressed in the previous two dismissals, causing an unnecessary 6-year delay, three appeals to the Superior court and two appeals to the Supreme Court thereby creating an abuse of proceeding that resulted in a violation of Petitioner's due process rights?
>
> III. Did the PCRA Court misstate the facts?
>
> IV. Did the PCRA Court incorrectly find that Petitioner was required to claim innocence on the basis this was a second PCRA Petition when in fact the first PCRA Petition went 15 years with no action because his counsel abandoned him, and was never reviewed on the merits due to the delay caused by the abandonment?

(Doc. 24-31, at 8).

On April 14, 2022, the Pennsylvania Superior Court affirmed the order of the PCRA court. (Doc. 24-32, *Commonwealth v. Cruz*, No. 643 MDA 2021, 2022 WL 1115870 (Pa. Super.)). Cruz filed a petition for allowance of appeal with the Pennsylvania Supreme Court. (Doc. 24-33). On February 15, 2023, the Pennsylvania Supreme Court denied the petition for allowance of appeal. (Doc. 24-34, *Commonwealth v. Cruz*, No. 367 MAL 2022 (Pa.)).

Thereafter, Cruz filed the instant petition pursuant to 28 U.S.C. § 2254. (Doc. 1).

## II. Habeas Claims Presented for Federal Review

Cruz seeks habeas relief based on the following grounds:

- Ground One: "Petitioner is incarcerated for a crime which newly discovered scientific evidence persuasively shows he is probably innocent, in violation of his due process rights."

- Ground Two: "Petitioner is entitled at least to discovery and an evidentiary hearing[.]"

- Ground Three: "The venue or venire should have been changed resulting in violations of U.S. Const. Admts. 5, 6, 8, and 14."

- Ground Four: "The trial court should have suppressed blood, hair, and DNA evidence, resulting in violations of U.S. Const. Admts. 4, 6, 8, and 14."

- Ground Five: "The trial court gave erroneous and confusing jury instructions."

- Ground Six: "Trial counsel were ineffective for failing to obtain an expert, properly consult with Petitioner in taking the witness stand, raise issues on direct appeal, raise prosecutorial misconduct, all in violation of U.S. Const. admts. 5, 6, 8, 14."

- Ground Seven: "The State Courts violated Petitioner's Constitutional rights when they found that Petitioner abandoned his PCRA, in violation of U.S. Const. admts. 5, 6, 8, 14."

(Doc. 1, at 5, 7, 8, 10-12, 14).

## III. Legal Standards

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). A habeas corpus petition pursuant to § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 498-99, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.

### A. Exhaustion and Procedural Default

A habeas petitioner must exhaust state court remedies before obtaining habeas relief. 28 U.S.C. § 2254(b)(1)(A). The traditional way to exhaust state court remedies in Pennsylvania was to fairly present a claim to the trial court, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court. *See Evans v. Court of Common Pleas, Delaware County*, 959 F.2d 1227, 1230 (3d Cir. 1992). However, in light of Pennsylvania

Supreme Court Order No. 218, issued May 9, 2000, ("Order No. 218"), it is no longer necessary for Pennsylvania inmates to seek allocatur from the Pennsylvania Supreme Court in order to exhaust state remedies under 28 U.S.C. § 2254(c). *See Lambert v. Blackwell*, 387 F.3d 210, 233-34 (3d Cir. 2004) ("We now hold that Order No. 218 renders review from the Pennsylvania Supreme Court 'unavailable' for purposes of exhausting state court remedies under § 2254(c).").[3] The habeas petitioner has the burden of proving exhaustion. *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

A petitioner's failure to exhaust his state remedies may be excused in limited circumstances on the ground that exhaustion would be futile. *Lambert*, 134 F.3d at 518-19. Where such futility arises from a procedural bar to relief in state court, the claim is subject to the rule of procedural default. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). In addition, if the state court does not address the merits of a claim because the petitioner failed to comply with the state's procedural rules in presenting the claim, it is also procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If a claim is found defaulted, the federal court may address it only if the petitioner establishes cause for the default and prejudice resulting therefrom, or that a failure to

---

[3] In May 2000, the Pennsylvania Supreme Court issued an order, Order No. 218, rendering review from the Pennsylvania Supreme Court "unavailable" for purposes of exhausting state court remedies for federal habeas petitions under 28 U.S.C. § 2254(c). *Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004) (interpreting *In re: Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, No. 218 Judicial Administration Docket No. 1 (Pa. May 9, 2000) ("Order No. 218")). This means that, for purposes of federal habeas review under § 2254, a person in Pennsylvania custody "need not seek review from the Pennsylvania Supreme Court" in order to have exhausted state remedies and seek federal habeas review. *Id.*

consider the claim will result in a fundamental miscarriage of justice. *Werts*, 228 F.3d at 192. To meet the "cause" requirement to excuse a procedural default, a petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Id.* at 192-93 (quoting and citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)). Additionally, a petitioner can rely on post-conviction counsel's ineffectiveness to establish cause to overcome the default of a substantial claim of ineffective assistance of trial counsel. *Martinez v. Ryan*, 566 U.S. 1, 14 (2012). To establish prejudice, a petitioner must prove "'not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Bey v. Sup't Greene SCI*, 856 F.3d 230, 242 (3d Cir. 2017).

For a petitioner to satisfy the fundamental miscarriage of justice exception to the rule of procedural default, the Supreme Court requires that the petitioner show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (quoting *Murray*, 477 U.S. at 496). This requires that the petitioner supplement his claim with "a colorable showing of factual innocence." *McCleskey v. Zant*, 499 U.S. 467, 495 (1991) (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). In other words, a petitioner must present new, reliable evidence of factual innocence. *Schlup*, 513 U.S. at 324.

B. Merits Standard

Once a court has determined that the exhaustion requirement is met and, therefore, that review on the merits of the issues presented in a habeas petition is warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). Section 2254(d) provides, in pertinent part, that an application for a writ of habeas corpus premised on a claim previously adjudicated on the merits in state court shall not be granted unless:

> (1) [the decision] was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) [the decision] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To establish that the decision was contrary to federal law "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." *Matteo v. Superintendent*, 171 F.3d 877, 888 (3d Cir. 1999). Similarly, a federal court will only find a state court decision to be an unreasonable application of federal law if the decision, "evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent." *Id.*

Further, under 28 U.S.C. § 2254(e)(1), a federal court is required to presume that a state court's findings of fact are correct. A petitioner may only rebut this presumption with clear and convincing evidence of the state court's error. *Miller-El v. Cockrell*, 537 U.S. 322,

341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions); *Matteo*, 171 F.3d at 888; *Thomas v. Varner*, 428 F.3d 492, 497-98 (3d Cir. 2005). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000). Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." *Mastracchio v. Vose*, 274 F.3d 590, 597-98 (1st Cir. 2001).

Like the "unreasonable application" prong of paragraph (1), a factual determination should be adjudged "unreasonable" under paragraph (2) only if the court finds that a rational jurist could not reach the same finding on the basis of the evidence in the record. 28 U.S.C. § 2254(d)(2); *Porter v. Horn*, 276 F. Supp. 2d 278, 296 (E.D. Pa. 2003); *see also Torres v. Prunty*, 223 F.3d 1103, 1107-08 (9th Cir. 2000); *cf. Jackson v. Virginia*, 443 U.S. 307, 316 (1979). "This provision essentially requires the district court to step into the shoes of an appellate tribunal, examining the record below to ascertain whether sufficient evidence existed to support the findings of fact material to the conviction." *Breighner v. Chesney*, 301 F. Supp. 2d 354, 364 (M.D. Pa. 2004) (citing 28 U.S.C. § 2254(d)(2) and (f)[4]). Mere disagreement with an inferential leap or credibility judgment of the state court is insufficient to permit relief. *Porter*, 276 F. Supp. 2d at 296; *see also Williams v. Taylor*, 529 U.S. 362,

---

[4] "If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination." 28 U.S.C. § 2254(f).

408-09 (2000); *Hurtado v. Tucker*, 245 F.3d 7, 16 (1st Cir. 2001). Only when the finding lacks evidentiary support in the state court record or is plainly controverted by evidence therein should the federal habeas court overturn a state court's factual determination. *Porter*, 276 F. Supp. 2d at 296; *see also Williams*, 529 U.S. at 408-09.

## IV. Timeliness Discussion

The Court will first consider Respondents' argument that claims three, five, six, and seven are untimely. (Doc. 24, at 24-26).

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A petition filed under § 2254 must be timely filed under the stringent standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See* 28 U.S.C. § 2244(d)(1). Specifically, a state prisoner requesting habeas corpus relief pursuant to § 2254 must adhere to a statute of limitations that provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28. U.S.C. § 2244(d); *see Jones v. Morton*, 195 F.3d 153, 157 (3d Cir. 1999). Under the plain terms of § 2244(d)(1)(A), a state court criminal judgment does not become final until appeals have been exhausted or the time for appeal has expired. *See Nara v. Frank*, 264 F.3d 310, 314 (3d Cir. 2001).

Cruz was sentenced on June 14, 1994. He filed a direct appeal, and, on June 26, 1996, the Pennsylvania Supreme Court denied his petition for allowance of appeal. Cruz's judgment of sentence became final on September 24, 1996, at the expiration of the 90-day period for filing a petition for allowance of appeal with the United States Supreme Court. *See* 42 Pa.C.S. § 9545(b)(3) (stating that judgment of sentence becomes final at the conclusion of direct review or the expiration of the time for seeking the review). Cruz had one year after his sentence became final to file his federal habeas petition. Thus, the AEDPA statute of limitations under § 2254(d)(1)(A) expired on September 24, 1997.

However, Cruz did not file the instant habeas petition until August 7, 2023[5], almost 26 years after the expiration of the statute of limitations. Therefore, the habeas petition must be dismissed unless the statute of limitations was subject to statutory or equitable tolling.

### 1. Statutory Tolling

Pursuant to 28 U.S.C. § 2244, the running of the limitation period is suspended for the period of time when properly filed state post-conviction proceedings are pending in any state court. *See* 28 U.S.C. § 2244(d)(2). Here, the statute of limitations began running on September 24, 1996 and, absent any tolling, would expire on or about September 24, 1997. However, pursuant to 28 U.S.C. § 2244(d)(2), when Cruz filed his first PCRA petition on March 18, 1997, the AEDPA's filing period was statutorily tolled. As of March 18, 1997, 175 days of the one-year filing period had elapsed. Thus, there were 190 days of the one-year filing period remaining.

The statute remained tolled until the conclusion of the PCRA proceedings—February 15, 2023, when the Pennsylvania Supreme Court denied Cruz's petition for allowance of appeal. As of February 15, 2023, there were 190 days left to file a federal habeas petition—giving Cruz until approximately August 24, 2023 to file his federal habeas petition. When Cruz commenced the instant habeas action on August 7, 2023, the statute had not yet

---

[5] Under the prisoner mailbox rule, the Court deems the petition filed on August 7, 2023, the date Cruz signed it. *See Houston v. Lack*, 487 U.S. 266 (1988) (holding that that date on which a prisoner delivers documents to prison authorities for mailing is considered the filing date); *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

expired. Therefore, the Court finds that Cruz's habeas petition is timely as a consequence of statutory tolling.

## V. **Merits Discussion**[6]

### A. Ground One

In ground one, Cruz asserts that he "is incarcerated for a crime which newly discovered scientific evidence persuasively shows he is probably innocent, in violation of his due process rights." (Doc. 1, at 5). Cruz claims that "he received confirmation that a U.S. Department of Justice review of testimony presented by FBI agent expert on hair analysis at his trial was erroneous and outside the scope of science." (*Id.*). Cruz raised this claim in state court in his second PCRA petition. The state courts concluded that Cruz was not entitled to relief on this claim. The Superior Court found as follows:

> Relevant here, the PCRA provides relief for a petitioner who demonstrates his conviction or sentence resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi). To establish a claim of after-discovered evidence, a petitioner must prove that the evidence: "(1) could not have been obtained prior to the conclusion of the trial by exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach

---

[6] "In considering a § 2254 petition, we review the 'last reasoned decision' of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231-32 (3d Cir. 2009) (citing *Bond v. Beard*, 539 F.3d 256, 289-90 (3d Cir. 2008)). Thus, "[w]e review the appellate court decision, not the trial court decision, as long as the appellate court 'issued a judgment, with explanation, binding on the parties before it.'" *Burnside v. Wenerowicz*, 525 F. App'x 135, 138 (3d Cir. 2013). The Pennsylvania Superior Court opinion issued on April 14, 2022 (affirming the dismissal of the second PCRA petition), the PCRA court opinion issued on February 4, 2014 (dismissing the first PCRA petition), and the Pennsylvania Superior Court opinion issued on December 22, 1995 (affirming the judgment of sentence), will be the primary reference points in addressing Cruz's claims. *See Commonwealth v. Cruz*, 2022 WL 1115870 (Pa. Super. 2022); Doc. 24-13, *Commonwealth v. Cruz*, CP-14-CR-1246-1993 (Pa. Com. Pl.); Doc. 24-7, *Commonwealth v. Cruz*, No. 00423 Harrisburg 1994.

> the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted." *Commonwealth v. Tedford,* 228 A.3d 891, 911 (Pa. 2020) (citations omitted). The four-part test is conjunctive and if one prong is not satisfied, there is no need to analyze the remaining prongs. *See Commonwealth v. Pagan,* 950 A.2d 270, 293 (Pa. 2008).
>
> ...
>
> [F]ollowing our review, we conclude that the record belies Appellant's claim that the PCRA court misstated the facts of record and reached an erroneous conclusion. The Honorable Jonathan D. Grine, sitting as the PCRA court, has authored a comprehensive, thorough, and well-reasoned Rule 907 Notice, citing the record, including the relevant testimony, and relevant case law in addressing Appellant's claim. The record supports the PCRA court's findings, and the Rule 907 Notice is otherwise free of legal error. We, thus, affirm on the basis of the PCRA court's March 5, 2021 Rule 907 Notice, which outlines the substantial evidence presented at trial that it was Appellant who committed the crimes and then properly concludes that the after-discovered evidence would not likely result in a different verdict. *See* Rule 907 Notice, 3/5/21, at 5-6, 10 (concluding that it properly dismissed Appellant's PCRA Petition because Appellant failed to demonstrate that a new trial would likely result in a different verdict because: (1) Agent Blythe's "testimony concerning the microscopic hair analysis was but one piece of evidence in the context of a seven day trial;" (2) "just under 50 witnesses [testified], and, overall, there was ample evidence" including evidence of Appellant's DNA present in semen and spermatozoa obtained from the victim's body and her underwear "upon which the jury returned the guilty verdict;" and (3) Agent Blythe's testimony regarding the hair analysis "was thoroughly mitigated by cross-examination.").

*Commonwealth v. Cruz*, 2022 WL 1115870, at *4; *see also* Doc. 24-28.

Cruz takes issue with the hair analysis and the testimony of FBI Agent Blythe. It is clear that other evidence considered by the jury indicated Cruz's guilt. Nearly 50 witnesses testified at trial. (*See* Doc. 24-28, at 6-7). Of note, the medical doctor that performed the autopsy testified. (*See id.*). The autopsy revealed that when the rope was removed from the victim's neck, there was a hair beneath the knot, and it was removed, photographed and

provided to the police. (*See id.*). Additional hairs were collected from the victim's clothing and body and surrendered to the police. (*See id.*). Swabs were taken from the victim's gums, throat, and genitalia and were provided to the police. (*See id.*).

A forensic scientist with the Pennsylvania State Police Crime Lab testified at trial. (*See id.* at 10). The forensic scientist testified that, after testing Cruz's blood, Cruz could not be excluded from having been the source of the seminal stains collected in this case. (*See id.*).

Testimony from a forensic science supervisor with the Pennsylvania State Police Regional Laboratory was read into the record. (*See id.* at 10). The forensic science supervisor opined, with a reasonable degree of scientific certainty, that Cruz's DNA was present on the victim's underwear. (*See id.* at 10-11).

With respect to FBI Agent Blythe's testimony, defense counsel thoroughly cross-examined him regarding his conclusions concerning the hair analysis. (*See id.* at 9).

The evidence also contained gas receipts showing that Cruz was present at the same time where the victim was, and tire tracks linked Cruz to the scene where the victim's body was discovered. (*See id.* at 4). Thus, significant evidence of Cruz's guilt was presented to the jury at trial.

Considering the overwhelming evidence weighing against Cruz at trial, Cruz has not shown that it is more likely than not that no reasonable juror would have convicted him had the hair analysis been proved faulty. Cruz has not demonstrated that he was actually

innocent of the crimes charged, nor that the scientific evidence relied on at trial somehow deprived him of his right to a fair trial.[7]

With respect to Cruz's due process claim, a defendant can claim that the admission of evidence at his trial was so prejudicial that it rendered his trial fundamentally unfair in violation of his right to due process. *See, e.g.*, *Andrews v. White*, 145 S. Ct. 75, 81 (2025) (per curiam) ("the introduction of unduly prejudicial evidence [can], in certain cases, violate the Due Process Clause."); *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974). But, in

---

[7] To the extent that Cruz asserts a freestanding actual innocence claim, this claim is not cognizable. The PCRA's provision that deals with claims of innocence based on after-discovered evidence lists what types of substantive claims are cognizable in a post-conviction proceeding. *See* 42 Pa. C.S.A. § 9543(a)(2)(vi). Section 9543(a)(2) expressly states that a petitioner is eligible for relief under the PCRA if he pleads and proves that his conviction or sentence resulted from one or more of the following: "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." § 9543(a)(2)(vi).

Section 9543(a)(2)(vi)—which the Third Circuit has described as "the provision of the [PCRA] dealing with claims of innocence based on after discovered evidence"—does not have a counterpart in the federal habeas statute. *Albrecht v. Horn*, 485 F.3d 103, 123 (3d Cir. 2007). Neither the Supreme Court nor the Third Circuit Court has held that a freestanding claim of actual innocence is cognizable in a federal habeas proceeding under Section 2254. In fact, as the Third Circuit Court has explained, "[i]t has long been recognized that '[c]laims of actual innocence based on only newly discovered evidence' are never grounds for 'federal habeas relief absent an independent constitutional violation.'" *Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (quoting *Herrera v. Collins*, 506 U.S. 390, 400 (1993)); *Albrecht*, 485 F.3d at 121-22. Nevertheless, in *Herrera*, the Supreme Court left open the possibility that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there was no state avenue open to process such a claim." 506 U.S. at 417.

The Third Circuit Court has more recently noted: "The Supreme Court has 'repeatedly left that [issue] unresolved, while expressing considerable doubt that any claim based on alleged 'actual innocence' is constitutionally cognizable.'" *Marcy v. Sup't Phoenix SCI*, 110 F.4th 210, 219 n.20 (3d Cir. 2024) (quoting *In re Davis*, 557 U.S. 952, 955 (2009) (Scalia, J., dissenting)). "Whatever the contours of such a right, it would entail an 'extraordinarily high' burden of proof—one so high that no petitioner in [the Third Circuit] nor the Supreme Court has ever met it." *Id.* (citing *Herrera*, 506 U.S. at 417).

Pennsylvania, to preserve such a claim for appellate review the defense must have raised that due process challenge first to the trial court. If the trial court permitted the admission of the evidence and the defendant is convicted, he then can challenge the trial court's evidentiary ruling on direct appeal.

Cruz raised his due process claim on PCRA appeal and argued:

> Did the PCRA Court for the third time, dismiss the PCRA Petition on the basis of insufficient after-discovered evidence which should have been addressed in the previous two dismissals, causing an unnecessary 6-year delay, three appeals to the Superior court and two appeals to the Supreme Court thereby creating an abuse of proceeding that resulted in a violation of Petitioner's due process rights?

(Doc. 24-31, at 8; *see also Commonwealth v. Cruz*, 2022 WL 1115870, at *2).

However, the Pennsylvania Superior Court held that Cruz waived the claim and reasoned as follows:

> In the section of his brief entitled "Violation of Due Process," Appellant complains that "excessive delay[ ] and repeated dismissals," together with the PCRA court's refusal to hold a hearing on the merits of the instant petition, resulted in the violation of his due process rights. Appellant's Brief at 16-18. Appellant has not cited in his brief to the place in the record where he preserved this claim. This is a violation of Pa.R.A.P. 2119(c) (requiring citation to the record) and, moreover, our review of the record indicates that Appellant has raised this issue for the first time on appeal. Accordingly, he has waived it. *See* Pa.R.A.P. 302(a) ("Issues not raised in the [lower] court are waived and cannot be raised for the first time on appeal.").

*Commonwealth v. Cruz*, 2022 WL 1115870, at *4.

Cruz raised the due process claim in his federal habeas petition in his PCRA appeal, and the Superior Court disposed of the claim on state procedural grounds. Specifically, the

Superior Court relied on Pennsylvania Rule of Appellate Procedure 2119(c). The rule governs citation to the record, and reads as follows:

> Rule 2119. Argument
>
> (c) Reference to record. If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears (*see* Pa.R.A.P. 2132).

PA. R. APP. P. 2119(c).

The Superior Court held that Cruz failed to comply with Rule 2119(c), noting that he failed to "cite[ ] in his brief to the place in the record where he preserved this claim." *Commonwealth v. Cruz*, 2022 WL 1115870, at *4. The Superior Court was unambiguous in its application of Rule 2119(c), and at no point in the opinion does it reach the merits of the due process claim. *See id.* As a result, Cruz's failure to comply with Rule 2119(c) constitutes procedural default with respect to his due process claim.

In addition, the Superior Court found that the due process claim was waived because Cruz raised the claim for the first time in his PCRA appeal. *Commonwealth v. Cruz*, 2022 WL 1115870, at *4. Pennsylvania Rule of Appellate Procedure states, "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal." PA. R. APP. P. 302(a).

Both Appellate Rules 2119 and 302(a) are independent and adequate bases to support a procedural default. *See Thomas v. Sec'y Pa. Dep't of Corr.*, 495 F. App'x 200,

206 (3d Cir. 2012) (finding that the waiver ruling by the Pennsylvania Superior Court was independent and adequate, supporting default); *Crocker v. Klem*, 450 F. App'x 136, 138 (3d Cir. 2011) (finding petitioner's claim defaulted under Rule 302(a); *Kirnon v. Klopotoski*, 620 F. Supp.2d 674 (E.D. Pa. 2008) (finding that a state court decision relying on Rules 2116 and 2119 of the Pennsylvania Rules of Appellate Procedure (regarding the required contents of an appellate brief) constitutes an independent and adequate state ground, resulting in a procedural default of the underlying claim).

Cruz can overcome procedural default with a showing of "cause and prejudice" or by showing a "fundamental miscarriage of justice." *Werts*, 228 F.3d at 192 (quoting *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir.2000) (quoting *McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999)); *see also Coleman*, 501 U.S. at 750 (applying "cause and prejudice" standard to district court review of habeas petitions). To show "cause," a petitioner must establish that "some objective factor external to the defense impeded counsel's [or petitioner's] efforts to comply with the State's procedural rule." *Murray*, 477 U.S. at 488. "Prejudice" requires that the "habeas petitioner…show 'not merely that the errors at…trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Id.* at 494 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)) (emphasis in original). Cruz has failed to present any sufficient argument to excuse his default of this claim. (*See* Docs. 1,

31). Accordingly, the Court finds that Cruz's procedural default of his due process claim should not be excused, and the claim is barred from federal review.

Furthermore, any attempt by Cruz to exhaust his state remedies at this time would be futile because the claim is procedurally defaulted for failure to comply with Rule 2119(c), waiver of the claim, and expiration of the statute of limitations. *See* PA. R. APP. P. 903(a) (time for filing a direct appeal); 42 PA. CONS. STAT. ANN. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding"); 42 PA. CONS. STAT. ANN. § 9545(b) ("Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final"). Cruz is therefore in procedural default for failing to comply with the state filing requirements.

B. Ground Three

In ground three, Cruz asserts that the venue or venire should have changed for his 1994 trial in light of the pretrial publicity in his case. (Doc. 1, at 8). Cruz first raised this claim in his omnibus pretrial motion and then litigated it on direct appeal. (Doc. 24-7).

The Fourteenth Amendment guarantees criminal defendants the right to "a trial by an impartial jury free from outside influences." *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966). However, this guarantee does not prohibit, at the request of the defendant, the transfer of the proceeding to a different district "if extraordinary local prejudice will prevent a fair trial - a

'basic requirement of due process.'" *Skilling v. United States*, 561 U.S. 358, 377 (2010). Thus, "when prejudicial pretrial publicity wholly undermines the impartiality of the jury, the trial court should take steps to assure a fair trial granting a change of venue or venire." *Stevens v. Beard*, 701 F.Supp.2d 671, 725 (W.D. Pa. 2010) (citing *Sheppard*, 384 U.S. at 363; *Rideau v. Louisiana*, 373 U.S. 723 (1963)).

The United States Supreme Court has held that "only the extreme case" of pretrial publicity will result in a presumption of prejudice. *Skilling*, 561 U.S. at 380-81. The United States Supreme Court has stated:

> In each of these cases [*Rideau*, 373 U.S. 723; *Estes v. Texas*, 381 U.S. 532 (1965); and *Sheppard*, 384 U.S. 333], we overturned a "conviction obtained in a trial atmosphere that [was] utterly corrupted by press coverage"; our decisions, however, "cannot be made to stand for the proposition that juror exposure to…news accounts of the crime…alone presumptively deprives the defendant of due process." *Murphy v. Florida*, 421 U.S. 794, 798-799, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). *See also, e.g.*, *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984). Prominence does not necessarily produce prejudice, and juror impartiality, we have reiterated, does not require ignorance. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (Jurors are not required to be "totally ignorant of the facts and issues involved"; "scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case."); *Reynolds v. United States*, 98 U.S. 145, 155-156, 25 L.Ed. 244 (1879) ("[E]very case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits."). A presumption of prejudice, our decisions indicate, attends only the extreme case.

*Skilling*, 561 U.S. at 380-81. Indeed, as the Third Circuit Court of Appeals has held, cases involving a presumption of prejudice are "exceedingly rare," and in order for a court to

presume prejudice, "[t]he community and media reaction…must have been so hostile and so pervasive as to make it apparent that even the most careful voir dire process would be unable to assure an impartial jury." *Rock v. Zimmerman*, 959 F.2d 1237, 1251 (3d Cir. 1992), *overruled on other grounds*, *Brecht v. Abrahamson*, 507 U.S. 619 (1993).

Moreover, in general, "a motion for a change of venue is addressed to the discretion of the trial court," and the trial court's decision to deny such a motion "will not be set aside absent an abuse of discretion." *Martin v. Warden, Huntingdon State Corr. Inst.*, 653 F.2d 799, 804 (3d Cir. 1981). In the context of a habeas corpus petition, this Court's inquiry is "whether the refusal to change venue amounts to a denial of the defendant's constitutional rights." *Id.*

Cruz initially filed his change of venue request in his omnibus pretrial motion, which the trial court denied. (Doc. 24-4). He then raised the claim on direct appeal. (*See* Doc. 24-7). In finding that the trial court did not abuse its discretion in denying Cruz's motion for a change of venue, the Pennsylvania Superior Court stated:

> The grant or denial of a change of venue is a matter within the sound discretion of the trial judge, who is in the best position to assess community atmosphere and to judge the necessity of a venue change. The trial court's exercise of discretion will not be disturbed on appeal absent an abuse of that discretion. *Commonwealth v. Carter*, 537 Pa. 233, 643 A.2d 61 (1994); *Commonwealth v. Pursell*, 508 Pa. 212, 495 A.2d 183 (1985); *Commonwealth v. Tedford*, 523 Pa. 305, 567 A.2d 610 (1989).
>
> The mere existence of pretrial publicity does not warrant the presumption of prejudice for purposes of determining whether change of venue is appropriate. *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986). Ordinarily, an appellant must demonstrate that pretrial publicity resulted in

actual prejudice in empaneling of the jury in order to succeed on a claim that the trial judge's decision to deny the motion for change of venue based on pretrial publicity was erroneous. *Commonwealth v. Faulkner*, 528 Pa. 57, 595 A.2d 28 (1991).

However, our Supreme Court has made an exception to the rule for cases in which pretrial publicity is so pervasive and inflammatory that the accused is relieved of his burden of proving actual juror prejudice. *Commonwealth v. McCullum*, 529 Pa. 117, 602 A.2d 313 (1992). Pretrial publicity is deemed inherently prejudicial if it is sensational, inflammatory, slanted towards conviction rather than factual and objective, reveals that the accused has a criminal record, refers to a confession or reenactment of the crime by the accused, or derives from reports from police and prosecuting officers. *Commonwealth v. Gorby*, 527 Pa. 98, 588 A.2d 902 (1991).

In the instant case, appellant presents an expansive list of pretrial publicity. Among the evidence presented are news accounts which mention appellant's prior criminal record. Particularly, appellant cites an October 26, 1993, article in the *Centre Daily Times* headlined "Accused murderer has violent past," which details appellant's criminal record. Therefore, appellant is entitled to the presumption of prejudice from this pretrial publicity.

However, our cases have held that even if the presumption of prejudice exists, where there is a "cooling off" period between prejudicial publicity and empaneling of the jury, dissipating the effect of the publicity, the defendant is not entitled to a change in venue. *Commonwealth v. Carter*, *supra*, 537 Pa. 233, 643 A.2d 61 (1994). *See, Commonwealth v. Galloway*, 495 Pa. 535, 434 A.2d 1220 (1981) (five month cooling-off period sufficient); *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287 (1978) (two-and-one-half month cooling-off period sufficient); *Commonwealth v. Kivlin*, 267 Pa. Super. 270, 406 A.2d 799 (1979) (two month cooling-off period sufficient).

In the case at bar, there was a five month cooling-off period between the final incident of publicity, which appeared in the *Centre Daily Times* on December 31, 1993, and the commencement of jury selection on May 31, 1994. There were, however, two instances of publicity during the cooling-off period. The first occurrence, February 10, 1994, was instigated by appellant when he summoned a television news crew to his jail cell in order to deny any involvement in the case. Appellant cannot claim that the cooling-off period was dissipated by publicity which he orchestrated. The second instance was

> an article printed in the *Centre Daily Times* on the first day of jury selection which discussed the FBI's interest in the trial. The article was clearly factual and objective in nature and not inflammatory or slanted towards conviction. We find that there was a sufficient period of time to dissipate the prejudicial nature of the prior publicity and that the two later instances of reporting were not sufficient to warrant a change of venue. Therefore, the trial court did not abuse its discretion in refusing appellant's motion for a change of venue.

(Doc. 24-7, at 5-8).

The Superior Court found that the five-month cooling-off period between the final incident of publicity and the commencement of jury selection sufficiently mitigated the effect of the publicity. In addition, the Superior Court found that two instances of publicity during the cooling-off period were insufficient to warrant a change of venue—the Superior Court found that the first instance was instigated by Cruz and the second instance (the news article) was factual and objective and did not contain blatantly prejudicial information. The Pennsylvania Superior Court ultimately found that the trial court was well within its discretion to deny the motion for a change of venue.

"When pretrial publicity is at issue, 'primary reliance on the judgment of the trial court makes [especially] good sense' because the judge 'sits in the locale where the publicity is said to have had its effect' and may base her evaluation on her 'own perception of the depth and extent of news stories that might influence a juror.'" *Skilling*, 561 U.S. at 386 (quoting *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991)). This Court cannot conclude that the state courts' decisions were based on an unreasonable application of the law or an unreasonable determination of the facts. Indeed, the Third Circuit has held that the denial of a motion for

change of venue is not an abuse of discretion even where "pre-trial publicity was extensive, and there was no 'cooling off' period between the publicity and trial," given the "lack of inflammatory, sensational journalism." *United States v. De Peri*, 778 F.2d 963, 972 (3d Cir. 1985); *see also Altawarh v. Wetzel*, 2017 WL 4855858, at *9 (E.D. Pa. Aug. 31, 2017) (quoting *Commonwealth v. Casper*, 481 Pa. 143, 392 A.2d 287, 295 (Pa. 1978)) ("It is saturation with 'inherently prejudicial' publicity, and not the possibility of saturation alone, that is important since, as we have noted, '(e)xtensive pretrial publicity…does not necessarily preclude a fair trial'"). Here, the state court found that there was a five-month cooling-off period between publicity and the trial and that that two instances of publicity during the cooling-off period were insufficient to warrant a change of venue. This Court finds that Cruz is not entitled to habeas relief on this claim.

C. Ground Four

In ground four, Cruz alleges that the trial court should have suppressed blood, hair, and DNA evidence. (Doc. 1, at 10). In his traverse, Cruz "respectfully withdraws this claim so as not to waste this Court's valuable time." (Doc. 31 ¶ 67). As such, the Court deems this claim withdrawn and will not consider the merits of the claim.

D. Ground Five

In ground five, Cruz alleges that the trial court gave erroneous and confusing jury instructions. (Doc. 1, at 11). On direct appeal, the Pennsylvania Superior Court found that the jury instructions were not prejudicial to Cruz and found as follows:

[A]ppellant makes the broad claim that the trial court's jury instructions, in their totality, were erroneous and confusing. In a rambling narrative, devoid of significant legal argument, appellant attempts to make eight allegations of trial court error. For the sake of clarity, our review will follow the order of the issues as covered in the Commonwealth brief.

It is well settled that this court must review the jury charge as a whole when determining if error has occurred. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975); *Commonwealth v. Smith*, 343 Pa. Super. 435, 495 A.2d 543 (1985). We will not find error based on isolated excerpts. *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61 (1983); *Commonwealth v. Klinger*, 369 Pa. Super. 526, 535 A.2d 1060 (1987). Furthermore, the trial court is not required to accept the precise words of a requested point for charge. All that is required is that the charge adequately, accurately and clearly explain the appropriate points of law to the jury. *Commonwealth v. Ohle*, *supra.*, 503 Pa. 566, 470 A.2d 61 (1981); *Commonwealth v. Porter*, 300 Pa. Super. 260, 446 A.2d 605 (1982).

With these principles in mind, we will consider each of appellant's allegations. First, appellant claims that the trial judge strayed from the Pennsylvania Suggested Standard Jury Instructions 15.2501B which provide in part:

> "...You have the right to bring in a verdict finding the defendant not guilty or finding him guilty of one of these types of criminal homicide."
>
> P.S.S.J.I 15.2501B.
>
> However, the court instructed the following:
>
> "...You have the right to bring in a verdict finding the defendant not guilty or finding him guilty of any one *or more* of these types of criminal homicide."

N.T. 6/13/94, p. 215 (Emphasis added.)

After completion of the charge, appellant's trial counsel objected that the charge would allow the jury to convict for more than one grade of murder. The court requested counsel on both sides to research the issue of whether the jury could convict on more than one grade of murder.

When neither side could satisfy the court's inquiry, the judge corrected his instruction with the following clarification: "I am telling you now you have the right to bring in a verdict finding the defendant *not* guilty of any or all of the criminal homicides or you may find him guilty of *one* of these types of criminal homicide." N.T. 6/14/94, p. 11. The judge repeated this instruction four more times. N.T. 6/14/94, pp. 14, 16, 26-27, 32. The explanation adequately removed any prejudice which may have occurred. This is proved by the jury verdict slip which found appellant guilty of only first degree murder.

Appellant also argues that the trial court improperly gave a progression charge which instructed the jury to begin its deliberations at first degree murder and work its way down to second and third degree murder.

Our court has upheld charges which instruct the jury at the outset to consider whether the defendant is guilty of the most serious degree or form of crime with which he has been charged; if not, the jury then proceeds to consider, in descending order of seriousness, the defendant's guilt or innocence on lesser degrees and forms charged. *Commonwealth v. Loach*, 421 Pa. Super. 527, 618 A.2d 463 (1992); *Commonwealth v. Hart*, 388 Pa. Super. 484, 565 A.2d 1212 (1989). Since appellant was charged with different forms or degrees of murder, his allegations of erroneous instructions in this regard are meritless.

Next, appellant contends that the trial court erred in giving a charge which was contradictory to the power of the jury to return a mercy verdict. However, appellant fails to present any legal argument to support his claim. We will not review issues that are not properly developed by citation to the record and reference to supporting case law. *Commonwealth v. Long*, 367 Pa. Super. 190, 532 A.2d 853 (1987). Moreover, we note that in *Commonwealth v. Loach*, *supra*, this court stated that there is serious doubt as to whether the courts of this Commonwealth still recognize a mercy dispensing function on the part of the jury.

Appellant's argument regarding the trial court's failure to instruct the jury pursuant to P.S.S.J.I. 15.2502D, Penalties for Murder, also contains no legal authority or argument beyond a narrative of the facts. Accordingly, we will not attempt to review this issue. *Commonwealth v. Long*, *supra*.

Appellant also claims that the trial court's clarification of the murder charge, which was done in the morning of the first full day of deliberation, unduly prejudiced appellant because it heavily emphasized the law of murder.

Appellant bases his theory on *Commonwealth v. Shelbo*, 271 Pa. Super. 556, 414 A.2d 393 (1979), which clearly rejects appellant's argument since the charge to the jury was accurate. Therefore, we find no prejudice by the trial court in correcting the jury instructions on murder the first thing in the morning.

Next, appellant cites an error when the judge, in a corrective statement, explained that "there *will* be only one finding of guilty on any of the criminal homicide." N.T. 6/14/94, p. 14. This is a single word error which, when read as a whole, did not affect the correct meaning of the instruction. However, at the request of defense counsel, the judge immediately corrected the error with a further curative instruction. N.T. 6/14/94, p. 15-16. Appellant does not claim that the curative instruction was insufficient, rather, he simply states that the original instruction was inaccurate. There was no prejudice to appellant.

Appellant also argues that the court erroneously instructed the jury regarding the state of mind exception to the hearsay rule.

The court gave the following instruction:

> "As a general rule, hearsay testimony is not admissible as evidence. Hearsay testimony is where a witness testifies about something said to him or her by a third party outside of court. There are, however, certain exceptions to this rule. One is where the witness testifies as to what a third party has said to him or her outside of Court about that third party's intentions to engage in certain conduct. Such testimony is admissible to prove the third party's stated intention to engage in certain conduct but is not proof that the third party actually engaged in that conduct.
>
> In this case testimony was received that the victim told a witness or witnesses that she intended to meet up with John Hoffpauer after leaving the group of students at the movie theater in South Portland, Maine, on March 21st 1993. Such testimony may be considered by you in deciding what the victim may have intended to do at that time. This evidence does not, however, establish that the victim, in fact, met with John Hoffpauer, only what she may have intended to do."

N.T. 6/13/94, pp. 205-206.

> Appellant argues that the testimony was offered for the truth of the matter and that the jury should have been instructed that the victim's intent to meet with her truck driver boyfriend made it more likely that she did in fact meet him.
>
> In giving the instructions, the trial court properly relied upon our holding in *Commonwealth v. Henderson*, 324 Pa. Super. 538, 472 A.2d 211 (1984). Therein, we noted:
>
>> "The objected to testimony merely established that it was the decedent's intent to meet with the appellant…The testimony does not establish that he went to the appellant's residence but that he merely intended to do so…We are convinced that the testimony falls clearly within the 'state of mind' exception to the hearsay rule."
>
> *Id.* at ___, 472 A.2d at 215-216.
>
> Consequently, the jury instructions as to hearsay were proper.
>
> Finally, appellant contends that he was prejudiced when the court refused to re-charge the jury on alibi and evidence of no flight by appellant. The jury specifically requested a re-charge on the principles of presumption of innocence, burden of proof, and reasonable doubt. The jury did not ask for a re-charge on alibi, therefore, the court did not err in refusing appellant's request to re-charge on alibi. Furthermore, appellant argues that the instruction was required pursuant to *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980). However, *Pounds* necessitates an alibi charge where an alibi defense is presented. In the case at bar, no alibi evidence was ever offered by appellant. Consequently, appellant's argument is completely meritless.
>
> In reviewing the jury instructions as a whole, it is obvious that any errors were immediately corrected by the trial court and that the jury was fully and accurately presented with the issues to be decided. Furthermore, in their totality, the jury instructions were not prejudicial to appellant.

(Doc. 24-7, at 11-16).

The mere fact that a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir. 2001) (quoting

*Estelle*, 502 U.S. at 71-72). Federal habeas corpus relief may issue only if the court finds that an error in the jury charge "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623. *See also Gov't of Virgin Islands v. Smith*, 949 F.2d 677, 684 n.7 (3d Cir. 1991) ("a habeas corpus petitioner faces a heavy burden in challenging allegedly defective jury instructions. The petitioner must show that the offending instruction is so oppressive as to render a trial fundamentally unfair.") (internal quotation marks and citation omitted); *Smith v. Horn*, 120 F.3d 400, 411 (3d Cir. 1997) ("The proper inquiry is whether there is a *reasonable likelihood* that the jury has applied the challenged instructions in a way that violates the Constitution." (internal quotation marks and citation omitted) (emphasis in original)). In general, challenges to the correctness of jury instructions raise purely state law issues, *see Engle v. Isaac*, 456 U.S. 107, 119 (1982), unless the jury instructions are so defective that they violate the defendant's fundamental due process rights, *see Geschwendt v. Ryan*, 967 F.2d 877, 883 (3d Cir. 1992).

This Court concludes that the jury instructions did not deprive Cruz of a fair trial. The record demonstrates that the state court reasonably determined that: (1) any errors were immediately corrected by the trial court; (2) the trial court did not err in the progression charge by instructing the jury that it is not to consider a lesser homicide charge until after it has found a defendant is not guilty of the higher degree murder; (3) there was no prejudice to Cruz when the trial court corrected the jury instructions on murder first thing in the morning because the charge was accurate; (4) the jury instructions on hearsay were proper;

(5) Cruz was not prejudiced when the trial court refused to re-charge the jury on alibi because the jury did not request a re-charge on alibi and Cruz did not present evidence of an alibi; and (6) that two of Cruz's claims did not contain any legal authority or argument and only contained a recitation of the facts. The state court found that, in reviewing the jury instructions as a whole, the trial court immediately corrected any errors, the jury was fully and accurately presented with the issues to be decided, and the jury instructions were not prejudicial to Cruz.

With respect to the progression charge, neither the Supreme Court of the United States nor the Third Circuit has held progression charges improper. *See, e.g.*, *Baker v. Wenerowicz*, No. 13-6329, 2014 WL 6823590, at *7 (E.D. Pa. Dec. 4, 2004). Indeed, numerous courts have found that progression charges comply with due process. *See Robinson v. Lamas*, No. 11-2728, 2014 WL 1632213, at *11 (E.D. Pa. Apr. 23, 2014) (collecting cases). In addition, as the Superior Court noted in Cruz's case, Pennsylvania state courts have upheld progression charges on numerous occasions where a defendant was charged with different degrees of the same crime. (Doc. 24-7, at 12-13). The Superior Court's progression charge was reasonable.

This Court also perceives no error from the Superior Court with respect to the jury charge on hearsay. The Superior Court thoroughly reviewed the testimony at issue and the trial judge's careful instructions to the jury. The Superior Court reasonably concluded that the jury instructions as to hearsay were proper, as they were offered to demonstrate the

victim's state of mind. The state court reasonably found that the testimony was not offered for its truth but, rather, to show state of mind.

The Superior Court's decision regarding the alibi instruction was also reasonable. As the Superior Court found, the jury did not ask for a re-charge on alibi and Cruz did not offer any evidence of an alibi. Thus, the Superior Court reasonably concluded that an alibi jury instruction was not required and Cruz's argument to the contrary was meritless.

Finally, it is well-settled that jury instructions are considered as a whole and that jurors are presumed to understand all instructions. *See United States v. Detelich*, 351 F. App'x 616, 622 (3d Cir. 2009) ("we presume that juries understand and carefully follow instructions"); *Martin*, 653 F.2d at 809 ("[A] single instruction to the jury may not be judged in artificial isolation but must be viewed in the context of the overall charge") (internal quotation omitted). The jury instructions taken as a whole clearly and accurately instructed the jury. Therefore, the state court's conclusion was not based on an unreasonable application of the law or an unreasonable determination of the facts. Accordingly, the Court will deny relief on this claim.

E. <u>Ground Six</u>

In ground six, Cruz asserts that "[t]rial counsel were ineffective for failing to obtain an expert, properly consult with Petitioner in taking the witness stand, raise issues on direct appeal, [and] raise prosecutorial misconduct." (Doc. 1, at 12). Cruz agrees with Respondents that "none of these issues were presented to the Pennsylvania appellate

courts…" (Doc. 31 ¶ 103). In a conclusory fashion, Cruz cites to *Martinez* to excuse the procedural default of this claim. (Doc. 31 ¶ 106).

*Martinez* recognized a narrow exception to the general rule that attorney errors in collateral proceedings do not establish cause to excuse a procedural default. *Martinez*, 566 U.S. 1. In *Martinez*, the United States Supreme Court held that in "initial-review collateral proceedings," where collateral review provides the first opportunity to litigate claims of ineffective assistance of appointed trial counsel, ineffective assistance of counsel can be "cause" to excuse the procedural default. *Martinez*, 566 U.S. at 8-11. The Court cautioned that its holding did not apply to counsel's error in other kinds of proceedings, such as "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 16. Its "equitable ruling" was designed to reflect the "importance of the right to effective assistance of counsel." *Id.* In order to establish such "cause," petitioner must show that the state courts did not appoint counsel during the initial-review collateral proceeding for a claim of ineffective assistance at trial, or where counsel was appointed, that counsel was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* at 14. Further, petitioner must also demonstrate that the underlying ineffectiveness claim is "substantial" and has "some merit." *Id.* *Martinez* does not excuse the non-cognizability of a petitioner's PCRA counsel ineffectiveness claims. *Id.* Under *Martinez*, only the

procedural default of an underlying claim may be excused, and that is if the underlying claims allege ineffectiveness of trial counsel. *Id.*

Cruz seeks to have the procedural default of ground six of the habeas petition excused based on PCRA counsel's failure to pursue ineffective assistance of trial counsel claims. (Doc. 31 ¶ 106). However, in his counseled, first amended PCRA petition, counsel raised several claims of ineffective assistance of trial counsel. (Doc. 24-11). Counsel argued that:

I. Trial counsel was ineffective in failing "to secure an independent expert to review and analyze the laboratory/DNA testing provided by the Commonwealth"

II. Trial counsel was ineffective "in their strategy in failing to secure an independent witness to examine the DNA, in conjunction with their decision to attempt to convince [Cruz] that he should not take the stand"

III. Trial counsel was ineffective in either failing to object to or raise the issue on direct appeal where objections may have been lodged as it relates to comments made by the District Attorney in closing and otherwise as it related to the demeanor of Defendant when confronted with the death of Dawn Birnbaum, as well as other statements in closing including, but not limited to:"

   A. Statements made at Page 137 of the Trial Transcript relative to convictions resulting most of the time as a result of the District Attorney's quasi judicial job to see that justice is done

   B. Statements made at Page 139 of the Trial Transcript relative to showing a good picture of John Hoffpauer to an individual by the name of Captain because he wanted to get to the truth

   C. Statements made at Page 142 of the Trial Transcript that God blessed your Defendant with John Hoffpauer

D. Statements made at Page 162 of the Trial Transcript as it relates to the Defendant's reaction when informed of the death of Dawn Birnbaum

E. Statements made at Page 163 of the Trial Transcript when the District Attorney indicated what Defendant could have told the police and that this behavior points to his guilt, as it set forth on Page 174 of the Trial Transcript

(Doc. 24-11, at 5-6). It is clear that PCRA counsel raised claims of ineffective assistance of trial counsel.

To the extent that Cruz argues that PCRA counsel failed to pursue ineffective assistance of trial counsel claims in PCRA *appeal* proceedings, *Martinez* does not apply. As stated, the *Martinez* does not apply to counsel's error in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Martinez*, 566 U.S. at 16. Accordingly, habeas review of the claims in ground six is foreclosed.

F. <u>Ground Seven</u>

In ground seven, Cruz asserts that "[t]he State Courts violated Petitioner's Constitutional rights when they found that Petitioner abandoned his PCRA [petition][.]" (Doc. 1, at 14). Cruz raised this claim in his counseled, first amended PCRA petition. (Doc. 24-11). Following a hearing, the PCRA court denied the petition. (Doc. 24-13, PCRA Court Opinion, *Commonwealth v. Cruz*, 2014 WL 8107150 (Pa. Super.)). On appeal, the Pennsylvania Superior Court affirmed the decision of the PCRA court and adopted the opinion of the PCRA court. *Commonwealth v. Cruz*, 2015 WL 7431048.

In addressing the claim, the PCRA court dismissed the petition on the bases that Cruz had abandoned his PCRA effort, and that the Commonwealth would be prejudiced in re-trying Cruz. The PCRA court reasoned as follows:

> 42 Pa.C.S.A. § 9543(b) provides that, even if a petitioner successfully meets the relevant burdens under subsection (a), a petition must be dismissed if it appears at any time that, because of delay in filing the petition[,]the Commonwealth has been prejudiced either in its ability to respond to the petition or its ability to re-try the petitioner.[ ]
>
> Dismissal pursuant to 42 Pa.C.S.A. § 9543(b) is also appropriate where a petitioner abandons a timely filed petition. *Commonwealth v. Rechenski*, 988 A.2d 699 (Pa. Super. 2010). Although the express terms of the subsection refer to delays "in filing", the dominant purpose of the section is to ensure the Commonwealth is not prejudiced by a petitioner's delay in pursuing his rights under the Post-Conviction Collateral Relief Act.
>
> Petitioner bears the responsibility of advancing his claims under the PCRA Act in a timely fashion. "While the PCRA is intended to afford certain defendants a secondary avenue to attack their conviction, it is beyond question that it is a defendant's duty to avail himself of the Act's provisions." *Commonwealth v. Rechenski*, 988 A.2d 699, 702 (Pa. Super. 2010). While the underlying petition was timely, over the next fifteen years Petitioner did little, if anything, to advance it. Although he alleged he made phone calls and sent letters to Attorney Bascom, he was unable to provide any proof of the same to this Court. Petitioner did claim he had copies of some letters to Attorney Bascom in his cell but was unable to locate them. The Court did not find this argument persuasive or credible.
>
> Attorney abandonment may, as Petitioner argues, constitute a factual basis for a timeliness exception. *Commonwealth v. Huddleston*, 55 A.3d 1217 (Pa. Super. 2012). However, the petitioner must act with due diligence in ascertaining the fact of the abandonment in order to avail himself of this exception. *Id.* In the instant case, Petitioner did not exercise due diligence in determining the status of his PCRA Petition, instead allowing fifteen years to elapse from the date of filing to the date this Court appointed new counsel to review the case. For those fifteen years, Petitioner sent no letters to this Court, filed no petitions, motions, or any other pleadings to indicate he wished

to be appointed new counsel or wished to proceed with his Petition in any way. He alleges he made "a few" calls and sent "a few" letters to Attorney Bascom, however, as noted above, this Court does not find this argument persuasive or credible, nor is it sufficient evidence of Petitioner's exercise of due diligence.

Even if this Court were to find Petitioner did not abandon his PCRA Petition, the Commonwealth argues it is substantially prejudiced in both its ability to respond to the PCRA Petition and its ability to retry the case. The Court agrees. The crime in question occurred in 1993. Petitioner was tried, convicted, and sentenced in 1994. After direct appeals were unsuccessful, he filed his PCRA Petition in 1997. In the 20 years that have passed since Petitioner's trial, six witnesses have died, including William Madden, the lead investigator; Nancy Lindeman, the victim's mother; Sarah Catherman[,] the owner of an EXX011 station who testified on behalf of Petitioner; Thomas Cawthem, the pathologist who took the victim's liver temperature and withdrew samples of bodily fluids for testing; Warren Chambers, the Deputy Coroner involved in transport and evidence collection; and Gordon Johnson, the FBI agent assigned to the case. In addition, another nine witnesses, including Heidi Hansen, Melinda Beason, and Stephanie Hudieston, school friends of the victim; Peter Herring, a detective with the Maine State Police who led the investigation of the victim's disappearance in Maine; Donald Bloser Jr., the forensic scientist who examined evidence found on the victim; William Johnson, Jr., a co-worker of Petitioner who testified on his behalf; Thelia Nash, the grandmother of John Hoffpauer, an initial suspect; Todd Schwalm, the technician who removed the tires from Petitioner's truck for the police; and Special Agent Chester Blythe, the FBI analyst who performed hair sample analyses, are all unable to be located despite the Commonwealth's best efforts.

The testimony given over the seven day trial by these witnesses provided evidence the jury used to convict Petitioner, including statements he made; the discovery, collection, and linkage of physical evidence to the Petitioner, including semen and hair samples; the execution of search warrants which produced additional evidence; evidence and testimony which tended to disprove theories as to other suspects; and evidence regarding the manner of the victim's death, her identity, and the timeline of her disappearance. The Commonwealth cannot retry Petitioner without the testimony of these witnesses, and to present their testimony merely by reading the transcript of the proceedings is insufficient. "The prosecution should not be required to

> present its evidence through reading a cold trial transcript when Appellant would have the ability to present live witnesses." *Commonwealth v. Weatherhill*, 24 A.3d 435, 440 (Pa. Super. 2011).
>
> Further, on September 12, 2003, the Honorable David E. Grine entered an order permitting the Pennsylvania State Police to destroy any evidence from the instant case in their possession. Although the items entered as exhibits at Petitioner's trial are still in the possession of the court reporter, without the witnesses noted above and the additional evidence destroyed by the Pennsylvania State Police, and due to the effects of time on the remaining witnesses' memories, it would be almost impossible for the Commonwealth to retry this case. Further, due in part to the 2005 disappearance of District Attorney Ray Gricar who prosecuted this case in 1994, it would be difficult for the Commonwealth to effectively respond to the Petition.
>
> In light of the foregoing conclusions, this Court finds the Commonwealth would be substantially prejudiced in both retrying Petitioner's case and in responding to the PCRA Petition.

*Commonwealth v. Cruz*, 2015 WL 7431048 at *3-5; *see also* Doc. 24-13.

As outlined by the PCRA court, 15 years elapsed between the filing of the first PCRA petition and the date the court appointed new counsel to review the case. In an effort to explain the passage of time, Cruz shifted the blame, asserting that PCRA counsel abandoned him. However, the PCRA court thoroughly reviewed the record and found that Cruz did not exercise due diligence in determining the status of his PCRA petition. The PCRA court noted that Cruz did not send any correspondence to the court—including no letters, no petitions, no motions, and no other pleadings to indicate that he wished to proceed with his PCRA petition. The PCRA court also found that Cruz could not present any evidence of letters that he allegedly sent to Attorney Bascom or any calls that he allegedly made to Attorney Bascom. In addition, as set forth above, the PCRA court found

that the Commonwealth would be prejudiced in retrying Cruz's case and in responding to the PCRA petition.

As stated, the Pennsylvania Superior Court adopted these opinions as their own and affirmed the decision of the PCRA court. Upon thorough review, this Court cannot conclude that the state courts' decisions were based on an unreasonable application of the law or an unreasonable determination of the facts. Accordingly, the claim in ground seven will be denied.

G. Ground Two—Request for Evidentiary Hearing

Cruz clarifies that ground two of his habeas petition "is a formal request for a federal evidentiary hearing on the expert hair analysis issue." (Doc. 31 ¶ 40). AEDPA permits evidentiary hearings on habeas review in a limited number of circumstances. *See Campbell*, 209 F.3d at 286. 28 U.S.C. § 2254(e) provides:

> (1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> (A) the claim relies on--
>
> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(1), (2). The initial inquiry when determining whether to grant an evidentiary hearing is whether the petitioner has "failed to develop the factual basis" of the claim in state court. *See* 28 U.S.C. 2254(e)(2); *Williams v. Taylor*, 529 U.S. 420, 433 (2000). "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams*, 529 U.S. at 433. "Diligence will require in the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law." *Id.* at 437. When determining if a petitioner has been diligent, "[t]he question is not whether the facts could have been discovered but instead whether the prisoner was diligent in his efforts." *Id.* at 435. In short, if the factual basis of the claim was not developed but the petitioner was diligent in pursuing the claim in state court, the opening phrase of § 2254(e)(2) does not bar an evidentiary hearing. *See Lark v. Sec'y Pennsylvania Dep't of Corr.*, 645 F.3d 596, 614 (3d Cir. 2011).

However, "a petitioner who diligently but unsuccessfully seeks an evidentiary hearing in state court still is not entitled to an evidentiary hearing in federal court under AEDPA. Rather, [. . .] whether to hold a hearing for a petitioner who is not at fault under § 2254(e)(2)

remains in the discretion of the district court, and depends on whether the hearing would 'have the potential to advance the petitioner's claim.'" *Taylor v. Horn*, 504 F.3d 416, 444 (3d Cir. 2007) (citing *Campbell*, 209 F.3d at 287); *see Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (explaining that the "basic" pre-AEDPA rule leaving the decision on whether to grant an evidentiary hearing to the "sound discretion of district courts" has not changed under AEDPA). "Where a petitioner fails to forecast to the district court evidence outside the record that would help his cause or 'otherwise to explain how his claim would be advanced by an evidentiary hearing,' a court is within its discretion to deny the claim." *Buda v. Stickman*, 149 F. App'x 86, 90 (3d Cir. 2005).

Here, the state courts explicitly declined to hold an evidentiary hearing on Cruz's claims regarding the hair analysis. *See Commonwealth v. Cruz*, 2022 WL 1115870. On appeal from the April 19, 2021 order dismissing his second PCRA petition, the Superior Court concluded that the PCRA court did not err in dismissing the petition without a hearing. *Commonwealth v. Cruz*, 2022 WL 1115870. The Superior Court found as follows:

> In the "Genuine Issue of Material Fact, Misstatement of Facts" section, Appellant claims that the PCRA court erred in dismissing his PCRA petition without holding a hearing on its merits. Appellant's Brief at 13-14. Appellant also asserts that there is a genuine issue of material fact regarding the relevance to the crime of "physical hair evidence collected." *Id.* at 11. He further asserts that the PCRA court's conclusion that there was "substantial" evidence outside of the hair analysis testimony to support the jury's verdict "misstates the entire case[,]" especially where there was purportedly an alternative viable suspect who authorities were unable to locate. *Id.* at 15-16.
>
> Appellant's assertion that the PCRA court erred in dismissing his petition without a hearing lacks merit as [ ] the parties stipulated to the court resolving

> the issues on the briefs without a hearing. Moreover, it is well[-]settled that a PCRA hearing is unnecessary where the PCRA court can determine from the record that there are no genuine issues of material fact. Here, as explained below, it was apparent to the PCRA court that Appellant did not present any genuine issues of material fact necessitating an evidentiary hearing. Thus, the PCRA court did not err or abuse its discretion in dismissing Appellant's petition without holding a hearing.

*Commonwealth v. Cruz*, 2022 WL 1115870, at *3.

Given these findings, Cruz has not established that there was a failure to develop the factual basis of the claims at the state court level, which eliminates the need for an evidentiary hearing here. *See Wilson v. Beard*, 426 F.3d 653, 665 (3d Cir. 2005) ("If a petitioner requests a hearing to develop the record on a claim in state court, and if the state courts ...deny that request on the basis of an inadequate state ground, the petitioner has not failed to develop the factual basis of [the] claim in State court proceedings for purposes of § 2254(e)(2).") (internal quotation marks omitted). The Court will deny Cruz's request for a hearing in ground two.

## VI. **Certificate of Appealability**

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. When a district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In addition,

> [w]hen the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Id.* Cruz failed to demonstrate that a certificate of appealability should issue. Accordingly, the Court will not issue a certificate of appealability.

## VII. Conclusion

The Court will deny the § 2254 petition for a writ of habeas corpus. (Doc. 1). A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: September 28, 2026